THE CONOCOCHEAGUE BANK *et al. vs.* RICH'D RAGAN *et al.*
*December,* 1835.

The *Conococheague* Bank was organized under the acts of 1813, ch. 33, and 1814, ch. 21. In December, 1819, at a general meeting of her stockholders, it was resolved to close the concerns of the bank, as early as practicable. By the act of 1819, ch. 142, provision was made for that object, and a resolution adopted, authorizing the debtors of the bank to pay their debts to it, in its stock, at sixteen dollars per share. and whenever the situa-

tion of the bank would authorize it, dividends should be made among the other stockholders at the same rate. Certain stockholders paid off their debts in this mode soon after; and the Directors went on to make dividends of capital among other stockholders, from 1820 to 1831. In 1833, a bill was filed to place all the stockholders upon an equal footing; the debtor stockholders having derived great advantage upon the score of interest. *Held,* That all the stockholders should be placed on an equal footing; and as those who had paid off their debts in stock, prevented an accumulation of interest on their debts, from the time of such payment, they are to be regarded in reference to any subsequent distribution of the funds of the bank among its stockholders, as if they had received six per cent. per annum interest on the stock from that period.

APPEAL from the equity side of *Washington* county court.

The appellees on the 11th of March, 1833, filed their bill on the equity side of *Washington* county court, on behalf of themselves, and other stockholders of the *Conococheague* bank, against the bank itself, and certain other stockholders claiming to have the effects of the corporation then on hand, distributed among them.

The bill alleged the regular organization of the bank, in pursuance of the acts of 1813, ch. 33, and 1814, ch. 21. That it commenced operations on the 15th of June, 1814, and continued them until the month of December, 1819; when at a general meeting of the stockholders, it was resolved to discontinue business, and close the concerns of the bank as early as practicable. That by the act of 1819, chapter 142, provision was made for that purpose, and that at a meeting of the Directors on the 13th of January, 1820, a resolution was adopted, authorizing the debtors of the bank to pay their debts to it, in its stock, at the rate of $16 per share; and that whenever the situation of the bank would authorize it, dividends should be made among the other stockholders, at the same rate; thus estimating the stock to be worth $16 per share, with a condition, that should the stock ultimately prove to be worth more or less than that sum, the difference should be paid to, or refunded by the stockholders, who might avail themselves of that mode of paying their debts—and to secure such refunding, the stock-

holders so paying, were required to execute, and did execute bonds to the bank. That soon after the passing of said resolutions, a large number of the debtors of the bank, paid their debts in its stock, at the rate aforesaid; and the Directors from time to time, made dividends among the other stockholders; the first of which was made in May, 1821, and the last in May, 1831, amounting in the aggregate, to $16 per share upon their stock. The complainants charge, that they have not been put upon an equal footing with those stockholders who availed themselves of the resolution of 1820, because soon after the passing of that resolution, the latter received a credit at the rate of $16 per share upon their stock, whilst the complainants have only received the same sum in small amounts, and at periods long subsequent thereto; and they therefore pray, that the assets now in possession of the bank, and such as they may hereafter receive, may be distributed among them, to the exclusion of those stockholders who took advantage of the resolution of 1820, until they shall have been placed by the payment of interest on an equality with them. They also prayed for general relief.

The corporation by its answer, admitted that it then held from eight to thirteen thousand dollars, which it was ready to distribute whenever the competent tribunal should decide the mode in which the distribution should be made.

Those stockholders who had discharged their debts to the bank, with its stock, at the rate of $16 per share, admitted the several statements of the bill; but insisted, that they were entitled to participate equally with the complainants in the fund then to be distributed, upon the ground, that notwithstanding they had applied their stock in the mode charged, they nevertheless had not lost their character of stockholders. That by the express terms of the resolution of the 13th of January, 1820, dividends were to be made among the other stockholders, to the amount of $16 per share, omitting all mention of interest; and that should the means of the bank exceed such dividend, the surplus should

be divided among all the stockholders equally. That it was under this understanding of the resolution, that they had stipulated to refund, in case the stock of the bank should prove to be worth less than $16 per share; the whole arrangement being eminently calculated to facilitate the settlement of its affairs, and at a great diminution of expense.

Upon these proceedings, the county court at November Term, 1833, passed a *pro forma* decree by consent, directing the funds which the bank then held, or which might thereafter be received, to be distributed among the complainants, and other stockholders similarly situated; provided the same should not be more than sufficient to pay them $16 per share, with interest at the rate of 6 per cent. per annum from the year 1820; applying the instalments as they had been received by them, to the payment of principal and interest, at the usual mode of calculating interest on bonds—the surplus, if any, to be distributed among all the stockholders in rateable proportions.

From this decree the defendants appealed to the Court of Appeals.

The cause was argued before STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, Judges.

PRICE for the appellants.

The resolution of the Directors of the 13th of January, 1820, authorized as it was, by an act of the legislature, and assented to by all the stockholders, is to be regarded as a contract, in terms as follows.

On the one side, that the debtor stockholders might pay their debts to the bank at $16 per share, in stock. That the same stockholders should give their bonds to the bank with condition, that should the stock, upon final settlement of the concern, not yield the full amount of $16 per share, the difference should be made good by the obligors.

On the other side, that the stockholders retaining their stock, should receive from the Directors in such sums as

were from time to time distributed in the progress of winding up the concern, the full amount of sixteen dollars per share. Neither the terms nor the spirit of this contract would authorize the payment of interest.

1. The bonds of the debtor stockholders require them to make good to the others, at the final settlement of the concern, the net sum of $16 per share. It is submitted with great confidence, that if there had been a deficiency of the assets, the debtor stockholders would not have been liable on their bonds, to make good at the close of the settlement of the concern, the sum of $16 *with interest*. From the spirit of the arrangement, and the relative position of the parties at the time the bonds were executed, if the obligors had then been asked to insert in their bonds a clause for the payment of interest, it would have been refused, as unjust and unreasonable. As it was, the whole risk of loss from this arrangement, was thrown upon them.

2. The payment of debts to the bank in its own stock, yielded no active fund for distribution among the creditor stockholders. It merely assumed the number of hands that were waiting to receive their distribution of the moneys paid in by those who neither held nor purchased stock. The $16 per share was to be made good by those who paid money; but the debtor stockholders by their bonds, bound themselves that the money so paid should amount to $16 per share, or that they would pay the deficiency on the amount of stock each had subscribed to the bank. The debtor stockholders therefore bound themselves that a certain amount should be paid by *others*, over whom they had no control. Their ultimate responsibility on their bonds, depended not only on the payment by others of what was due by them, but also upon the diligence and fidelity of the Directors, whose conduct was in no respect subject to their wishes or control. Is not such a contract to be strictly expounded?

These debtor stockholders became virtually sureties for all the debtors of the bank, as well as for the integrity and atten-

tion of the Directors, and of all the agents employed by them to collect the money of the bank. I do not say that this undertaking of the obligors covered the whole stock and concerns of the bank, but as far as the obligation did go, such was the character of it.

The appellants therefore rely upon the contract, and expect it to be expounded according to the obvious intention of the parties at the time.

3. The arrangement was greatly beneficial to the bank, and all those interested in its concerns.

ANDERSON for the appellees.

The grounds upon which the complainants seek to have the remaining funds of the bank distributed as they wish it, are fully set forth in the bill.

They seek nothing more than equality, as far as they can obtain it; and their claim seems to be perfectly fair and reasonable.

By the arrangement in 1820, one class of the stockholders, those who were debtors to the bank, received the full value of their stock as it was then estimated, viz: $16 per share. They paid their debts with their stock at that price, which was the same thing as paying in money, and receiving back immediately the value of their stock.

It was further agreed, that if it should turn out that they had been allowed too much, they should refund; and they gave their bonds accordingly. And if there should be a surplus after paying the other stockholders the same amount, they should have an equal share of the surplus. This was a fair and convenient arrangement, and was mutually advantageous. On the one hand, it saved the debtors from the inconvenience of paying what they owed to the bank, and then waiting a long time for distributions on their stock; and on the other hand, it enabled the Directors to close a large portion of the business at once, without the trouble of collecting money and then distributing it again to the same individuals. If the remaining debts had been collected im-

mediately, the money would have been paid over to the remaining stockholders, and they too would have received $16 a share, and there would have been no difficulty. But instead of this, these stockholders had to wait a long time, receiving from time to time small distributions, of from one to two dollars; and it was more than ten years before they received to the amount of $16 per share on their stock.

After paying them to this amount, in this way, there remains a further sum to be distributed, which is considerably less than the balance they are entitled to, rating their stock at $16 in 1820, and allowing them interest at the rate of six per cent. from that time; and the sole question is, whether this remaining fund shall be given to them exclusively, or whether those stockholders who received $16 a share in 1820, shall come in with them for an equal distribution.

Now it is obvious, that this surplus is made up of the interest received on the debts due to the bank. Had the remaining debtors paid promptly, there would not have been more than enough to pay the remaining stockholders $16 a share; but while they delayed payment, interest was accumulating, and nothing has been allowed to the stockholders by way of interest or annual dividends. It is manifestly equitable and right, that the interest which has thus accrued on account of the delay should be allowed to the stockholders who have been delayed in receiving their money. It would have been more advantageous to them to have received the whole of their money at once, and they were no way instrumental in producing the delay. They should not be losers by the delay, (if there were enough to allow them at the rate of six per cent. on their stock, which is not the case,) nor should the other stockholders be gainers by it, which they will be, if they are allowed to participate in the remaining funds. For if all had been settled in 1820, there would have been no surplus to distribute; nor would there have been any now, if the Directors had divided among the remaining stockholders the interest received on the debts due to the bank, which accrued after that time.

It is made perfectly manifest by the result, that $16 a share was the full value of the stock in 1820, and it certainly was not intended that those stockholders who then were allowed that sum, should receive any thing more, until the others were put on an equality with them. The only way of approximating to this equality is by distributing the remaining funds according to the prayer of the complainants.

The equity and fairness of the claim, seem to me too clear to require further remarks.

DORSEY, Judge, delivered the opinion of the court.

All the stockholders of the *Conococheague* bank should be placed upon an equal footing. Those who have paid off their debts with their stock, have, as a necessary consequence, prevented an accumulation of interest on their debts from the time of such payment; and consequently are to be regarded, in reference to any subsequent distribution of the funds of the bank amongst its stockholders, as if they had received *six per cent. per annum* interest on their stock, from the time of its payment to the bank in discharge of their liabilities then due. So that they are to receive no dividends on their stock until the other stockholders are, by dividends to be made, placed upon an equality with them, as respects the receipt of interest.

This equity of the outstanding stockholders, is so self-evident, that it needs neither argument or illustration to sustain it.

The decree of the county court however, must be reversed, because it gives to the outstanding stockholders interest from the year 1820, as if all payments of stock had been made on the last day of that year, a fact, which in the absence of all proof thereof, we do not feel ourselves at liberty to assume.

DECREE REVERSED *without costs, and the cause remanded to the county court for further proceedings.*