# Francis H. Inloes, Garnishee of Turnbull & Co., *vs.* The American Exchange Bank.

An assignment for the benefit of creditors gave the trustee power, at his discretion, to sell the property conveyed by the deed, consisting of a stock of goods in trade, *"gradually in the manner and on the terms in which, in course of their business"* the grantors *"have sold and disposed of their merchandise."* Held:

That this provision renders the deed *void* upon its face, and *cannot* be aided by *parol proof* that it was inserted for the *benefit of creditors, and was designed to, and did, operate for their advantage.*

It is well settled, that an instrument void in law for matter appearing in the deed itself cannot be made good by averment.

Assignments for the benefit of creditors need not provide that the sales must be *always* made *immediately* and *for cash*, whether the interest of creditors will be affected or not; the trustee may be left to the exercise of a sound discretion, but the assignment must not confine him by *unreasonable provisions*,

A party may always ask the direction of the court upon the *effect* of testimony

in a cause, whether that testimony be offered subject to all objection as to its admissibility and effect or not.

The finding of facts must be left to the jury, even where the proof is all on one side, but this is not necessary where a case is tried upon *admissions made at the bar*, for the jury may discredit testimony but they *cannot find contrary to the agreement of the parties.*

The party appealing cannot, in this court, object to a prayer, that it assumes a fact which was admitted at the trial, and which admission was made for *his benefit.*

APPEAL from the Superior Court of Baltimore city.

*Attachment on judgment* sued out by the appellee to affect the property and credits of Turnbull & Co., and laid in the hands of the appellant, as garnishee, who appeared and pleaded *nulla bona.*

The defence relied on was a deed of trust for the benefit of creditors, executed by Turnbull & Co. to the appellant, as trustee, and dated the 22nd of September 1851. This deed purports, on its face, to be executed by the *partnership firm* of Turnbull & Co., and conveys "all the goods, wares, merchandise, chattels and effects (goods consigned for sale to said Turnbull & Co. excepted) now in, of and belonging to the store and warehouse held and conducted by the said Turnbull & Co., on Baltimore street in the city of Baltimore; and also all the notes, bonds, evidences of debt, securities, claims and demands of, or belonging to the said John and George, as partners aforesaid, or wherein they are in anywise interested." The provisions of this deed are fully stated in the report of this case on the former appeal in 7 *Md. Rep.*, 380. The only provision which need be stated here is the following:

" *Third.* It is hereby declared, as part of the trust of these presents, that said Inloes, his executors or administrators, shall, at his discretion, sell as aforesaid, all, or any part or parts, of said goods, wares, merchandise, chattels and effects, by public or private sale, and by wholesale or retail, or in parcels, as may by him, as to all or any portions of said property, be deemed eligible, and it being understood that said property may be gradually sold in the manner and on the terms in which, in course of their business, said Turnbull & Co. have sold and disposed of their merchandise."

The present trial was had under the *procedendo* awarded by this court upon the reversal of the judgment on the former appeal in this case, reported in 7 *Md. Rep.*, 380.

*Exception.* At this trial both parties read in evidence all the testimony offered in the former trial, as set out in the *procedendo* record, which testimony, with the *admissions* in said record, it was agreed should be admitted as if offered and made anew.    (It is only necessary to state that this record contained an *admission* of the execution of the deed of trust, together with *oral proof*, on the part of the plaintiff, that at the time of its execution Turnbull & Co. were engaged in buying and selling carpets and oil cloths, selling both at wholesale and retail, but mostly by retail, on a credit of six months, according to the *usage* in Baltimore, and that of the proceeds of sale made by the trustee one-half were for sales on credit; and of oral proof on the part of the garnishee by J. S. Inloes, that the course pursued by the trustee in selling at private sale was by the advice of witness, who deemed it best for the interest of those concerned.)   The garnishee then, at the present trial, offered evidence, subject to all objections as to its admissibleness and effect, by J. S. Inloes, John Turnbull, Jr., one of the grantors in the deed, and others, to the effect that the *third clause* in the deed was inserted upon the advice of the witness, Inloes, and was designed for the benefit of the creditors in order to obtain the best prices for the goods, and that it actually operated greatly to their advantage, the loss on the goods sold at private sale being about 25 per cent. less than on those sold at auction, and about three-fourths of the stock having been sold at private sale upon the same terms on which Turnbull & Co. had been accustomed to sell.

Upon this evidence the plaintiff prayed the court to instruct the jury: "That the deed of trust offered in evidence in this case, and dated the 22nd day of September 1851, is void in law." This prayer the court (Presstman, J.,) granted, and the garnishee excepted and appealed.

The cause was argued before Le Grand, C. J., Tuck and Bartol, J.

*Chas. F. Mayer* and *John Nelson* for the appellants, argued:

1st. The deed appears now relieved from all unfavorable imputation attached to it by this court, when, on the former appeal, the clause was left unexplained which brought the deed into odium. The ample testimony elucidating the motive, and indeed the necessity, for the creditor interest of the clause, that necessity and the wisdom of the clause, verified by the result of the sales effected, give the deed a new character. It is such possible explanatory testimony, that this court must have had in view, when, with cautious reservation, they say, in 7 *Md. Rep.*, 392, (after dwelling favorably on the case of *Janes vs. Whitbread*, 5 *Eng. Law & Eq. Rep.*, 431, where even the carrying on of the debtor's trade by the trustee was sanctioned, *because ancillary* to the trust for the creditors,) that "such is not the fact," (proved in the case then,) "and as this case *at present stands* we can regard it," (the assignment,) "in no other light than an attempt to place the assignee in the place of the debtor for the purpose of carrying on the latter's business as it had been previously conducted by him before the deed of trust, without any special *benefit to be derived thereby by the creditors*, and without limitation or restriction upon the trustee." The English case thus adverted to as an exemplar of the sound law for such a clause, and that case having more in the provision of "carrying on trade" to be overcome than this case exhibits, and the clause there being yet sustained only because it was shown to be introduced for the benefit of creditors, why is it that when we put ourselves in *pari materia* with that very case, by proof that our provision was not only meant, but was indispensably requisite for the creditor interest, we should not be admitted to the same favor before this court as met that case in England? The acceptance of the principle of that case, shows that this court deemed testimony explanatory of such a clause competent, and that however *prima facie* and without explanation the clause might vitiate the trust, it had but a presumptive force to that effect, and was not of that class of provisions which rendered the deed fatal in *Green & Trammel vs. Trieber*, 3 *Md. Rep.*, 39. Resting, as the court does, on the case in 5 *Eng. Law & Eq.*

*Rep.*, 431, they admit that this is not a clause that by necessity is so dishonest of purpose as to repel all explanation. The stamp of dishonesty is not, by the law, so obdurately put upon the clause, that the truth of purpose and of moral necessity in the clause may not be testified. The cases in Virginia, 11 *Grattan*, 348, *Cochran vs. Paris*, and 778, *Dance vs. Seaman*, show the principles which we maintain as ruling here, that where it is *possible* that the provisions questioned be honest in intent and useful for the fair object of the deed, evidence *dehors* the deed may be given *to rebut* any presumptive fraud, and this seems the spirit of the view of this court in *Cole vs. Albers & Runge*, 1 *Gill*, 423. Even in New York, whence this new rigor in construing provisions of assignments for creditors is derived, it is said, that the question upon the fraudulent nature of the particular provision is, whether, if the provision be carried out according to its reasonable intent, it will prove practically fraudulent, and that a provision is not to be condemned as fraudulent if the fraud resides only in the abuse of the provision. 15 *Barb.*, 618, *Brigham vs. Tillinghast*.

2nd. But all question as to the admissibleness of parol testimony here may be considered as at rest, since it has been given, in fact, without any objection. 5 *Md. Rep.*, 121, *Coates & Glenn vs. Sangston.* 3 *Md. Rep.*, 295, *Trump vs. Baltzell.* 4 *Phillip's Ev.*, Notes, 576. Our case is by the testimony for the first time now before the court, within the principle and very terms of the case adopted by this court in 5 *Eng. Law & Eq. Rep.*, 431, and comes within the principle of the cases where a deed has been upheld, notwithing the trustee's power, at discretion, to delay the trust administration by working up manufacturing materials and using trust funds for so doing. It may be here said that New York, even, has sanctioned provisions of the terms just adverted to. 11 *Wend.*, 240, *Cunningham vs. Freeborn*. But the testimony to show the *bona fides* and high expediency of the clause was competent, even if it had not been given without objection. The presumption of fraud, deduced from the unexplained words, *is rebutted* and the deed restored. It is not familiar law, that where a clause in a deed is susceptible of explanation

23    v. 11

to a fair intent and effect, although, until explained, the law presumes against it, parol testimony may be given thus to develop the actual *bona fides* and usefulness of the clause? 3 *Croke*, 501, *Nevison vs. Whitely*. 2 *Vent.*, 83, *Bush vs. Buckingham*.

3rd. There is no provision in the deed, in any discretionary authority given to the trustee, which annuls the deed, even if the clause referred to be considered as allowing sales *upon credit*. The power allowing the trustee to sell in manner as the debtors sold is proved to be one essential for the best interest of creditors, as surely commanding the best results for them. If such a course involves a credit on sales, that power is not to be regarded as a discretion of a fraudulent dye, and is to be treated only as a credit is where *usage of trade* requires and so sanctions it. The power, from the tenor of the clause, is *necessarily limited* by the *practice* and *periods of credit* in the business of the debtors, and while the limits of the usual credit are observed no indiscretion is committed and no fraud can be imputed. As was stated in 15 *Barb.*, 618, no *presumption* of fraud in a trustee, by exceeding the reasonable bounds of a power, shall be indulged, and thus where a power to sell on terms, as the trustee may deem most eligible, does not, by New York decisions, authorize the inference, that sales on credit (repudiated by those decisions) will be made, although such sales be within the words used. Such is the liberality of even New York judicature, grudgingly censorious as it is, of assignments for paying creditors. 19 *Barb.*, 176, *Bellows vs. Patridge*. 21 *Barb.*, 65, *Nichols vs. McEwen. Ibid.*, 128, *Clark vs. Fuller*. Indeed, let the *bona fides* of a deed be once shown, and then any discretional power of the trustee may well be deemed harmless for the integrity of the deed, since, as a trust, the operation of the trustee will be under the control of a *court of equity* to check excess and to dictate the path of his administration. 2 *Mich. Rep.*, 309, *Hollister vs. Loud*. Such views seem to have once governed our Court of Appeals, and the principle of credit operations in trusts does not appear to have appalled the court as fraught with fraudulent delay and ruinous hindrance to creditors, for undeniably in *Beatty*

*vs. Davis*, 9 *Gill*, 211, the there-sanctioned privilege of a trustee to mortgage the trust property conferred the largest credit authorization. The sanction was safely lent to the trust, for the *bona fides* of the conveyance was not disputed, and the court of equity became, as the judicial guardian of the trust rights created, a virtual party to the deed for all wholesome administration of the estate, and to interpose against all wild action within the scope of the granted powers. The cases presented at the former hearing of this cause sustain a discretional authorization for credit sales, and we now add 22 *Ala.*, 238, *Shackelford vs. Bank of Mobile*. Indeed we would respectfully suggest, that if *exotic* judicature of this country is to be invoked for light or counsel, we cannot see preeminent impressiveness over our southern judicial developments, in the New York judicial novelties, either in the philosophy or erudition, or social policy of the juridical work. There remains to be considered but the clause which exonerates the trustee from liability where he has not been guilty of actual and wilful wrong and default. This clause has been decided to import no more than a court of equity limits as to the amenableness of a trustee. Remissness in his duty is an actual wrong to those whose interests are committed to him, and indifference to obligations distinctly before him, and appealing to him for care and action, is wilful default as much as gross negligence is constructive fraud. 18 *Barb.*, 549, *Jacobs vs. Allen*. *Jac.*, 198, *Macklin vs. Fuller*. *Hill on Trustees*, 314, and cases cited at former argument.

4th. The prayer of the appellee was defective, because it takes from the jury the finding of the deed of trust. If the deed be considered in evidence under an *admission* coming from us, still the prayer is not relieved from irregularity for *assuming as a fact* what it only was for the jury to show to be a fact, viz., the executing of the deed, for no admission of a fact, (which is but a mode of proof,) nor the absence of all counter testimony to a testified fact, will dispense with leaving to the jury the finding of the fact from the testimony in the case. 2 *Gill*, 410, *Charleston Ins. Co. vs. Corner*. 3 *Gill*, 31, *Bullitt vs. Musgrave*. 6 *Gill*, 87, *Franklin Fire Ins.*

*Co. vs. Hamill.* 2 *Md. Rep.,* 75, *Brown vs. Ellicott.* 10 *Md. Rep.,* 118, *Boyd vs. McCann. Ibid.,* 234, *Mitchell vs. Mitchell. Ibid.,* 333, *Giles vs. Ebsworth & Hays.* These cases show the critical strictness which this court applies to see that a prayer shall, by no implication of a fact, or even of the necessary consequence of a fact, exclude from the jury the ascertainment of all facts, and even the operation and results of facts. We do not see how it matters whether the appellee claims under the deed or whether we do.

*Wm. Schley* for the appellee, argued:

1st. The proposition asserted in the appellant's first point is this, that a deed, *void on its face,* because it contains provisions forbidden by law, may, nevertheless, be supported *by parol proof,* and be made to operate according to its tenor, and in accordance with these forbidden provisions. Where a deed, *void as it stands,* is sought to be *reformed* on the ground that the prohibited provision was inserted by *mistake,* so that, *when reformed* according to the real intention of the parties, it may avail in its *altered* condition, we perceive, at once, the equity of such an application. But to ask that a deed, void on its face, shall, nevertheless, take effect as it stands, *in spite of the law,* upon the ground that, although it is precisely such as the parties designed it should be, they acted from good motives, is virtually asking that the will of the parties shall prevail over the law; for the whole effect of the parol evidence, if admissible, is to show that the witnesses *advised* the insertion of the provisions which have rendered the deed void. The plain answer is, that the parol proof cannot vary the deed; it cannot expunge the provisions which the law has denounced as fraudulent, which fraudulent provisions, as this court has already decided, have rendered the deed void. The efficacy or invalidity of the deed depends not on the fact *who* advised the insertion of the clause, nor on the opinion of the witnesses as to its expediency and utility, but *being there,* it renders the *deed,* as it stands, void in law.

2nd. The parol testimony was not admitted *without exception,* as stated in the appellant's second point. It was given

Inloes, Garn. of Turnbull & Co., *vs.* American Exchange Bank.

and received *subject to all objections to its admissibility and effect.* If the question depended on the *quo animo,* and the clause would be legal or illegal, as the *motives* for introduction should be found to be *good* or *bad,* there would be not only propriety, but necessity, for the inquiry into motives. But the law has laid down the stern rule, binding alike on the good and the bad, that *no* debtor shall make conveyances "to hinder, delay or defraud his creditors;" and this court has already decided that such a clause as the one in question, does violate this rule.

3rd. The discussion, again, of the questions which were fully argued and decided on the former appeal, can hardly be expected of the appellant. If the deed is *void in law,* it is quite immaterial whether it is void *merely* on the ground actually decided on the former appeal, or whether it is void, also, on any of the *other* grounds then discussed and not decided.

4th. The prayer did not trench upon the right of the jury; for the plaintiffs did not ask any instruction which asserted a right based on the deed. The plaintiff did not claim *under,* but *against,* the deed. It was offered by the garnishee as a bar to the plaintiff's recovery; for the defendant relied *entirely* on this deed to sustain the plea of *nulla bona.* The garnishee had offered in evidence this deed, and its *factum* was admitted; if valid, it sustained the plea. Whether valid or not, was a question of law. The plaintiff supposed it to be void on its face; and, if so, then it could not sustain the plea. Now, clearly, the plaintiff had a right to ask the opinion of the court on this point of law. It is the privilege of a party to raise any question of law arising out of the facts of the case, and to demand the opinion of the court upon it. 1 *Gill,* 128, *Whiteford vs. Burckmeyer & Adams.* Such a prayer is, in effect, like a demurrer to evidence. It concedes to the opposite party the benefit of the *facts* on which he relies, but denies the legal efficacy of those facts to produce the result for which they were invoked. It is the province of the court to determine the meaning and effect of written instruments. If the plaintiff had claimed *under* the deed, and the prayer had *assumed* its existence, as the basis of the instruction asked for, the cases

cited by the appellant would have some application. But it was assuming nothing that belonged to the jury, to ask the court to say that the deed was void on its face.

TUCK, J., delivered the opinion of this court.

When this deed was before the court on the former appeal— 7 *Md. Rep.*, 380—it was declared void in law, for matter apparent on its face; and the cause was sent back under a procedendo. At the second trial, the defendant, now appellant, offered evidence that the clause, in reference to which this court had expressed its opinion, was inserted for the benefit of the creditors, in order to prevent loss, and that sales at auction would have produced less than was realized from the gradual sales in the usual way of carrying on the business of the grantors. The object being to remove the objection made by the court to that clause of the instrument. But, notwithstanding this proof, the court granted a prayer of the plaintiff, that "the deed is void in law," from which ruling the defendant appealed; and the question presented by this state of the case is, whether the parol proof warranted a different decision on that prayer?

We understand, from the argument, that this evidence was offered under the impression that the court, on the former appeal, declared the deed to be void because there was nothing to show that this provision was designed to operate, and did operate, for the advantage of the creditors, and it is now insisted that, such evidence being in the record, the deed should .be pronounced valid. That opinion, when considered with reference to the cases in this court upon the subject of these trust deeds, and referred to by the judge, does not admit of the interpretation now placed upon it. That the passage relied upon by the appellant's counsel, considered alone, may sustain his view, might be conceded without placing that adjudication in conflict with previous decisions. This may be the case with many opinions, if portions are separated from the context, and considered apart from the reasoning of the whole, and the principle of the cases referred to. In using the words, "as this case at present stands," the court must be understood as

having reference to the validity of the transaction upon the deed alone, for we take it to be well settled that an instrument void in law, for matter appearing in the deed itself, cannot be made good by averment; and so we had decided in *Green & Trammel vs. Trieber*, 3 *Md. Rep.*, 11. It was contended that the question of fraud should have been left to the jury, upon all the circumstances attending the transaction, but we answered, *(page* 40,) "There is nothing for the jury to pass upon, when the court can see that the instrument is fraudulent on its face. We are to look to the character with which the law stamps the deed, without reference to extrinsic facts as to motive. If the law imputes to the grantor a design in making the deed, no evidence of intention can change the presumption. If the law declares such deeds to be void, it is no matter how the question of fraud, in fact, may stand." And in 3 *Md. Rep.*, 40, *Sangston vs. Gaither*, where it did not appear by the deed that the grantor, though requiring releases from his creditors, had conveyed all his property, and it was urged that he might have had other property to pay creditors, not provided for by the trust, we said, "This view of the case cannot change the character which the law gives to this assignment." So, since this case was decided, we have held the doctrine in *Malcolm vs. Hodges*, 8 *Md. Rep.*, 418, that the validity of such deeds must be determined without regard to the surrounding circumstances, which, in that instance, were, that a large majority of the creditors had examined the affairs of the debtor, and concluded, unanimously, that it would be for the advantage of all the creditors that an assignment should be made, and the deed in question was executed accordingly; and, in reference to the argument of counsel, that the grantors had derived no benefit from the reservation by resulting trust, and that the creditors were not injured by that feature of the deed, as there was no surplus, it was said, "We cannot look outside the assignment to ascertain whether there will be a surplus or not. That would make the efficacy of the instrument depend on extrinsic circumstances, when the law requires that its intent shall be gathered from its face." Interpreting that part of the opinion, therefore, by the application of these

principles, which are the settled law of this court, we think that the only legal deduction, from the words now relied upon by the appellant's counsel, is, that the circumstances there mentioned, which might sanction such a deed, where the grantors were manufacturers, and the power given was to work up unmanufactured materials, should appear on the face of the deed, in order that the court might determine, as a question of law looking to the deed alone, whether it was valid or void. It is not said, nor did we mean to intimate, that the nature of the trade or business, and the effect of carrying it on, or of selling in one way or another, could be shown by parol, so as to give effect to an instrument which, in the conclusion of the opinion, we declared to be void upon its face, that the court ought so to have pronounced it, and that there was nothing left for the jury to find.

Besides, we were remarking upon the case in *5 Eng'. Law & Eq. Rep.*, 431, and its appositeness was placed upon the hypothesis of the Messrs. Turnbull being manufacturers of oil cloths, carpets, and the like, which they have not shown themselves to be, even conceding that such evidence could aid the deed.

It does not follow, from the views we have expressed in reference to provisions of this kind, that sales must be always made immediately and for cash, whether the interests of creditors will be affected or not. The trustee may be left to the exercise of a sound discretion, but the assignment must not confine him by unreasonable provisions. Trustees are sometimes selected by a portion of the creditors; sometimes, if not generally, by the debtor and a few who are to be preferred; and, often, most of the creditors are informed of the transfer when it is too late to protect themselves by any other means than attacking the deed. If these assignments are fairly and *bona fide* made, the creditors, if consulted by the trustee, will know best how the trust should be conducted, and if sales, in any particular manner, will yield larger results, they will have the best reason for assenting to that mode. Thus the creditors can prescribe a law for the guidance of the trustee, which will fully protect him, and may accomplish for them what, under

the terms of the deed, he may not be able to effect. And, where the trustee is apprehensive of difficulty, or, for any reason, desires protection in the performance of his duties, he may invoke the jurisdiction of a court of equity, and proceed under its direction.

This evidence was offered "subject to all objections as to its admissibleness and effect." A party may always, even without this qualification, ask the direction of the court upon the effect of testimony in a cause. Here the right was expressly reserved. *Whiteford vs. Burckmyer,* 1 *Gill,* 128. The prayer conceded the truth of the defendant's evidence, and the court, by sustaining it, in effect declared that the provisions of the deed could not be made operative by the parol proof.

It is also contended, that the *factum* of the deed was assumed by the prayer. It is well settled, that even where the proof is all on one side, the finding of the facts must be left to the jury; but this is not necessary where the case is tried upon admissions at the bar. The jury may discredit the testimony, but they cannot find contrary to the agreement of the parties. *Armstrong vs. Risteau,* 5 *Md. Rep.,* 276. Here the admission was for the appellant's benefit. His defence was title under the assignment, of which there was no evidence. It was admitted at both trials, and, without reliance by defendant on this concession of the plaintiff, there was no impediment to his recovery.

This deed conveys partnership property only, and the evidence shows that it embraced all of that description. There is nothing to show there was any other. The case differs from *Sangston vs. Gaither,* and *Malcolm vs. Hodges,* in this, that here the deed does not stipulate for releases. As this feature of the case was not presented at either appeal, we decline expressing any opinion on the points it may involve; and advert to it now that this decision may not be considered a precedent in support of a like deed, if this objection should be raised hereafter.

*Judgment affirmed.*