## STATE, RESPONDENT, *v.* HOPKINS, APPELLANT.

### (No. 5,286.)

(Submitted September 17, 1923.   Decided October 23, 1923.)

[219 Pac. 1106.].

*Criminal Law—Intoxicating Liquors—Conspiracy—Declarations —Intent—Evidence Admissible—Res Adjudicata—Estoppel.*

Criminal Law—Conspiracy—Declarations of Third Persons—When Admissible, When not.
  1.  The rule that a defendant in a criminal case cannot be bound by conversations between third persons in his absence does not apply to acts and declarations of a co-conspirator done or made in furtherance of a common design during the life of the conspiracy in which case they are admissible after proof of the conspiracy; hence the admission of such conversations in the absence of sufficient evidence to establish a conspiracy was error.

Same—Conspiracy—Criminal Partnership—How Created.
  2.  A conspiracy results from an agreement and is a partnership for criminal purposes, and therefore to bring it about the minds of the conspirators must meet understandingly in an intelligent and deliberate agreement to do the contemplated act, circumstantial evidence being sufficient to establish its existence.

Same—Intent—Evidence Disclosing Commission of Another Offense— When Admissible.
  3.  Upon the trial of one accused of crime evidence of a distinct and independent offense is not admissible, but if a particular fact tends to establish an element (such as criminal intent), of the offense for which he is being tried, it may be proved, even though it may disclose that defendant had committed another offense.

---

  3.  Admissibility of evidence of other crimes to prove connection with acts charged, see notes in 44 **Am. Rep.** 299; 105 **Am. St. Rep.** 976; 62 **L. R. A.** 278.

Intoxicating Liquors—Criminal Intent—Evidence of Other Crime Admissible, When.

4. In a prosecution against a sheriff for robbery alleged to have been committed by seizure of a cargo of intoxicating liquor, where defendant had failed to put the owner under arrest or to make return of the liquor seized, evidence that a short time before he had pursued the same course of conduct with reference to a seizure from another person, the testimony of the latter was properly admitted to show that the element of intent was, and that of inadvertence was not, present.

Criminal Law—Recurrence of Similar Occurrences—Admissibility to Prove Intent.

5. Since similar results do not usually occur from abnormal causes, such as inadvertence, accident or such as flow from an innocent intent, the recurrence of similar results in a prosecution for crime tends to negative such causes and to establish intent in the person causing them to recur.

Same—*Res Adjudicata*—Record of Acquittal—Estoppel.

6. The doctrine of *res adjudicata* is as applicable in criminal cases as in civil ones, and where an issue has once been decided in favor of the defendant charged with crime in one cause, the adjudication as evidence is · conclusive between him and the state, and the prosecution is estopped to raise the same matter in a subsequent action against him.

Same.

7. Defendant had been acquitted on a previous trial of a similar offense with which he was charged, and although by their verdict the jury in the former case had in effect decided that the testimony of the prosecuting witness was not true, the court permitted that witness to repeat his testimony at the subsequent trial for the purpose of proving criminal intent in defendant in committing the second offense, and refused to admit the record of his former acquittal generally, but admitted it only so far as it might affect the credibility of the witness. *Held,* that the state was estopped, on the principle of *res adjudicata,* to prove intent by the witness, and that the court erred in refusing to admit the record of defendant's acquittal generally and in limiting its effect.

*Appeal from District Court, Musselshell County; George A. Hortan, Judge.*

C. C. HOPKINS was convicted of robbery and appeals. Reversed and remanded for new trial.

*Messrs. Jeffries & McNaught,* for Appellant, submitted a brief; *Mr. C. J. Jeffries* argued the cause orally.

Citing: *Cooper* v. *Commonwealth,* 106 Ky. 909, 90 Am. St. Rep. 275, 45 L. R. A. 261, 51 S. W. 789; *Mitchell* v. *State,* 140 Ala. 118, 103 Am. St. Rep. 17, 37 South. 76; *People* v. *McDaniels,* 137 Cal. 192, 92 Am. St. Rep. 81, 59 L. R. A.

578, 69 Pac. 1006; *People* v. *Frank,* 28 Cal. 507; 8 R. C. L., sec. 200; *People* v. *Corbin,* 56 N. Y. 363, 15 Am. Rep. 427.

*Mr. Wellington D. Rankin,* Attorney General, for Respondent, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

In 1 Wharton on Criminal Evidence (19th ed., p. 195 *et seq.*), it is said: ''The question has been raised in criminal trials whether a previous indictment for or acquittal, or conviction of, the other crime, has any effect upon the admissibility of evidence of such other crime. It may be safely stated that the almost universal judgment is that neither of these circumstances will operate to the rejection of such evidence.'' The above quotation from the text is followed by an extensive note citing numerous English and American cases, wherein the above rule is adhered to.

The reasoning of the courts is, in substance, that the defendant is not in jeopardy of a crime of which he has been acquitted, but of the crime for which he is being tried, and that evidence of the transactions which had resulted in his acquittal is admissible if competent to show a fact material to the issue being tried. (*State* v. *Robinson,* 16 N. J. L. 507; *State* v. *Houston,* 1 Bail. L. (S. C.) 300; *McCartney* v. *State,* 3 Ind. 353, 56 Am. Dec. 510; *People* v. *Frank,* 28 Cal. 507; *State* v. *Tindal,* 5 Harr. (Del.) 488; *Bell* v. *State,* 57 Md. 108.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

C. C. Hopkins was convicted of the crime of robbery, and appealed from the judgment and from an order denying him a new trial.

The several specifications of error relied upon relate to the admission of evidence and will be grouped and considered under two general heads, but to illustrate the rulings of which complaint is made a brief statement of the case is necessary.

In November, 1920, the defendant Hopkins was sheriff of

Musselshell county; Frank Wilson was chief of police of the city of Roundup, and George Bennett was a pool-hall proprietor in Roundup, residing at the Grand Hotel in that city.

James P. Barroch, the prosecuting witness in this case, tes-
[1] tified that he lived in Lewistown; that about November 16, 1920, Bennett came to Lewistown and there contracted to purchase from the witness a quantity of intoxicating liquor; that, on November 26, the witness, with one Ed. Harrold, transported twenty cases of whisky, of the value of $1,600, from Lewistown to Roundup, to be delivered to Bennett pursuant to the agreement; that they arrived at Roundup about 10 o'clock on the evening of the 26th, saw Bennett at his pool-hall, and arranged to make delivery to him at the hotel a short time later; that about three-quarters of an hour later they returned to the pool-hall, and from there Bennett accompanied them to the hotel; that they stopped their automobile in the alley directly back of the hotel; that Bennett entered the building by a rear entrance to ascertain whether it was safe to make delivery at that time; that as Bennett returned to the alley, Hopkins and Wilson appeared upon the scene, each armed with a gun; that, at the command of Hopkins, the witness and Harrold surrendered, and, under the direction of Wilson and in company with him and Bennett, they drove their car with its cargo of liquor to the city jail, where they found Hopkins awaiting them; that the witness and Harrold were locked in a cell, while Hopkins and Wilson stored the liquor in the jail; that they were then released, permitted to take their car, and were ordered to leave town at once. Further evidence was introduced to show that a warrant was not issued for the arrest of Barroch, and that the defendant did not make return of any liquor seized by him at or near that time. Over the objections of defendant, Barroch was permitted to give, somewhat in detail, the conversations which he claims to have had with Bennett in Lewistown and in Roundup, not in the presence of defendant, and the

rulings admitting this evidence constitute the assigned errors of the first group.

For the declared purpose of showing that the defendant was not acting in the discharge of his official duties as sheriff when he took the liquor from Barroch in the manner described by that witness, or, in other words, to prove the felonious intent charged in the information, the state was permitted to introduce the testimony of one George E. Heath, of Zortman, Montana, to the effect that he, with one Frank Pryble, transported ten cases of whisky from Zortman to Roundup early in November, 1920; that about November 9 he contracted to sell the liquor to Bennett; that while in the act of delivering it, and while in the alley back of the Grand Hotel on the evening of November 9, Hopkins and Wilson appeared, each armed with a gun, and compelled witness and Pryble to surrender and to drive their car with its cargo of liquor to the city jail, where the witness and Pryble were locked in a cell while Hopkins and Wilson stored the liquor in the jail; that they were then released, and ordered to leave town at once. The records disclosed that a warrant for Heath's arrest had not been issued, and that the defendant did not make return of any liquor seized by him at or near that time. It was admitted by the county attorney that the foregoing testimony given by Heath was the same as the testimony which Heath had given in the same court upon the trial of cause No. 347. In cause No. 347, Hopkins, Wilson and Bennett were charged jointly with the crime of grand larceny in taking the ten cases of liquor from Heath on November 9, 1920, and were tried upon the charge, and acquitted prior to the trial of this case.

After defendant had introduced his oral testimony which amounted to a categorical denial of all of the testimony given by Barroch, his counsel offered in evidence the record in cause No. 347. The court refused to admit it generally, but admitted it for the sole purpose "of affecting the credibility of the witness Heath," and instructed the jury accordingly.

In admitting the testimony of Heath, in refusing to admit the record in cause No. 347 without qualifications, and in limiting the purpose for which the record might be considered by the jury, it is contended the court erred, and these alleged errors are comprehended in the second group of assignments.

1. It is an elementary general rule that a defendant in a criminal case cannot be bound by conversations between third parties not in his presence, hence the rulings permitting Barroch to testify to the conversations he had with Bennett were *prima facie* erroneous. An exception to the general rule, as well established as the rule itself, permits evidence of the acts and declarations of a co-conspirator done or made in furtherance of a common design to be admitted against all the other parties to the conspiracy, whether the acts or declarations were done or made in their presence or with their knowledge, provided only that they were done or made during the life of the conspiracy (*State* v. *Allen*, 34 Mont. 403, 87 Pac. 177), but the evidence of such acts or declarations is admissible only after proof of the existence of the conspiracy (subd. 6, sec. 10531, and sec. 11977, Rev. Codes 1921; *State* v. *Dotson*, 26 Mont. 305, 67 Pac. 938).

There is not any pretense here that the existence of a conspiracy between Hopkins, Wilson and Bennett had been shown at the time the objectionable evidence was admitted; and the only evidence introduced at any time tending to prove the existence of such a conspiracy is that Bennett contracted to purchase the liquor from Barroch; that he was present when Hopkins and Wilson took the liquor from Barroch; that he accompanied Wilson, Barroch and Harrold to the city jail and was present there when Barroch and Harrold were released from custody.

A conspiracy is constituted by an agreement, and is a part[2] nership in criminal purposes. (*United States* v. *Kissel*, 218 U. S. 601, 54 L. Ed. 1168, 31 Sup. Ct. Rep. 124 [see, also, Rose's U. S. Notes].) While it is not essential that the agreement between the parties should be formal, it is necessary that

their minds meet understandingly, so as to bring about an intelligent and deliberate agreement to do the acts. (12 C. J. 544.)

Of course, it is not indispensable that a conspiracy be proved by direct evidence. Circumstantial evidence is legal evidence, and, if sufficient, will establish the existence of a conspiracy, but we conclude that the few isolated circumstances detailed above do not furnish the required *quantum* of proof, and that the court erred in admitting the evidence under consideration.

2. It is the general rule that, upon the trial of one accused of crime, evidence of a distinct and independent offense is not admissible. To enlarge the scope of the inquiry beyond the facts pertinent to the offense for which the accused is being tried would ordinarily subject him to the danger of surprise against which no possible foresight might be able to prepare and no innocence defend. But if particular facts tend to establish an element of the offense for which he is being tried, they may be proved and the evidence is not the less relevant because it may disclose or tend to disclose that the accused had committed another crime. In the language of Justice Brewer "No man can by multiplying crimes diminish the volume of testimony against him."

In order to make out the charge of robbery it was necessary for the state to prove that defendant acted with felonious intent in taking the liquor from Barroch, and, to establish that intent, the state offered the testimony of Heath. In harmony with the rule just stated, the state may introduce evidence of other acts similar to the one for which the accused is being tried, for the purpose of proving criminal intent. (*State* v. *Newman,* 34 Mont. 434, 87 Pac. 462; *State* v. *Hill,* 46 Mont. 24, 126 Pac. 41; *State* v. *Pippi,* 59 Mont. 116, 195 Pac. 556.)

The reason which underlies the rule admitting such evidence may be illustrated by reference to the state's theory of this case, assuming the truth of the testimony given by the state's witnesses, for the purpose of this illustration only. By

virtue of defendant's official position as sheriff, and in the regular discharge of his duties, he might have taken the liquor from Barroch in the manner described by that witness without committing any offense whatever; indeed, it was his duty to seize the liquor, and, if in his judgment it was reasonably necessary to make an exhibition of force to accomplish his purpose, he could not be subject to criticism upon that score. But, having seized the liquor, it was his duty to arrest Barroch, even though he had no warrant, take him before the proper tribunal, and lodge complaint against him, and also make proper return of the liquor so seized. (Sec. 9, Chap. 143, Laws 1917.) This cause of action arose, if at all, prior to the enactment of Chapter 9, Laws of Extraordinary Session of 1921, and the provisions of section 11070, Revised Codes of 1921, are not invoked and could not be relied upon successfully in this instance. Now it might be possible that the failure of the defendant to detain Barroch, to make the required complaint against him, and to make return of the liquor seized, could result from mere inadvertence on the officer's part; but, if it be shown that ten days previously he had pursued the same course of conduct with reference to his transaction with Heath, common sense applies the doctrine of logical inferences, and may eliminate entirely the element of inadvertence or [5] innocent intent. Inadvertence would be an unusual and abnormal element which might perhaps be present in one instance, but the oftener similar instances occur with similar results the less likely is the abnormal element the true explanation of them. In short, since similar results do not usually occur through abnormal causes, the recurrence of similar results tends to negative accident or inadvertence or other innocent mental state, and to establish a criminal intent. (1 Wigmore on Evidence, sec. 302.)

Under the rule just considered, the testimony of Heath was admitted properly.

But this evidence of the alleged offense committed on No-
[6, 7] vember 9 was admitted solely for the purpose of tend-

ing to prove that defendant acted with a felonious intent in taking the liquor from Barroch on November 26. Defendant had been compelled to meet and rebut the same testimony given by Heath upon the trial of cause No. 347, and this he did successfully, with the result that the jury trying that cause pronounced him not guilty, and, when the record of that acquittal was introduced by defendant upon the trial of this cause, the court advised the jury that it could be considered only as reflecting upon the credibility of Heath; in other words, the court indicated that the jury might find that the testimony given by Heath upon the trial of this cause was true, notwithstanding the record of acquittal. The question then arises: What force or effect should have been given to the record in cause No. 347 when introduced upon the trial of this cause?

The dearth of authority upon the subject seems almost inexplicable. Mr. Freeman says: "Important as the subject would apparently appear to be, it is one which has not been thoroughly explained by the text-writers, and not frequently passed upon by the courts, considering the vast multitude of criminal cases and the various questions raised in that class of cases." (103 Am. St. Rep. 20.)

The doctrine of *res adjudicata* as applied in civil cases is fairly well settled. It has its foundation in two fundamental maxims of the law: "A man shall not be twice vexed for one and the same cause" and "It is for the public good that there be an end to litigation." (Broom's Legal Maxims, 247–250.) Almost a century and a half ago the English House of Lords declared "that the judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar, or, as evidence, conclusive between the same parties upon the same matter, directly in question in another court." (*Duchess of Kingston's Case*, 20 How. St. Tr. 355), and the doctrine has been adhered to in this country ever since.

In *Marvin* v. *Dutcher*, 26 Minn. 391, 4 N. W. 685, the court stated the rule as follows: "It is irresistible that the judg-

[68 Mont. 504.]

ment of a court of competent jurisdiction is conclusive as evidence upon parties and privies in respect to every question directly involved in the issue and determined by the judgment."

In Freeman on Judgments, section 318, it is said: "The principles applicable to judgments in criminal cases are, in general, identical, so far as the question of estoppel is involved, with the principles recognized in civil cases."

In 2 Van Fleet's Former Adjudication, section 628, the author says: "If there is a contest between the state and the defendant in a criminal case, over an issue, I know of no reason why it is not *res judicata* in another criminal case."

In *Commonwealth* v. *Evans*, 101 Mass. 25, the doctrine was applied to the fullest extent. Evans was first charged with assaulting Henry McKenzie with a knife, and was tried and convicted. Later McKenzie died as the result of the wound, and Evans was then charged with manslaughter, and upon the trial of that charge he sought to prove that he used the knife in necessary self-defense. In rebuttal the commonwealth introduced the record of his conviction in the assault case, and the trial court instructed the jury that the record was conclusive evidence that the use of the knife upon McKenzie was unjustifiable, and that the defense that the knife had been lawfully used by the defendant in self-defense had been determined by the judgment, and was not open to him. In reviewing that instruction, the supreme court said: "The only question is as to the effect of that judgment, as evidence, upon the issues of fact raised in the trial of this case for manslaughter. The court below ruled that it established conclusively that the assault was unjustifiable, and therefore disproved the position of the defendant in this case, that the knife was used in self-defense. Upon general principles, the parties being the same, the former judgment must be held to have established all facts which were involved in the issue then tried, and essential to the judgment rendered upon it. The conviction for assault and battery therefore necessarily

excludes all justification which could have been set up under the general issue of not guilty. The facts of the assault remain the same; and whatever would sustain the ground of self-defense, now relied on, would have been a complete defense to the former prosecution. The verdict and judgment in that case were therefore rightly held to be a conclusive answer to the attempt at justification made in this case.''

In *People* v. *Frank*, 28 Cal. 507, the defendant was convicted of passing a draft with a forged indorsement upon it, knowing that the indorsement was a forgery. To prove the felonious intent, the state was permitted to show that at about the same time the defendant had passed two other drafts, designated 3 and 9, with the same forged indorsement upon each of them. In offering this evidence, the prosecuting officer admitted that the defendant had been charged with forging the indorsement on draft 3, and with passing the draft, knowing that the indorsement was a forgery, and had been tried upon the charge and acquitted. The supreme court held that the admission of the evidence did not do violence to the doctrine of *res judicata* under the peculiar circumstances there involved, but in the course of the opinion said: ''The soundness of the doctrine to the effect that the judgment of a court of competent jurisdiction directly upon the point is as a plea at bar, or as evidence conclusive upon the same matter coming directly or incidentally in question in another action between the same parties, cannot be doubted. * * * In order to render the verdict and judgment of not guilty upon the draft offered in evidence conclusive upon the facts which the prosecution sought to prove for the purpose of showing guilty knowledge, it must appear with certainty from the evidence offered in support of the alleged estoppel that those facts were directly and necessarily found by the verdict in that case in favor of the defendant; or in other words, that the jury could not have found the verdict which they did without having passed directly upon the facts offered to be proved, and found them against the prosecution.'' After enumerating

the several propositions which were necessarily involved in the trial of the defendant for passing draft 3, the court continued: "Now if all these propositions were directly and necessarily decided in favor of the defendant by the verdict and judgment in question, then the district attorney was estopped from making the proof; or if either of them was so decided, as to such he was estopped, upon the principle that matters which have been once judicially determined cannot be again drawn into controversy as between the parties and privies to the determination," and concluded: "The verdict cannot operate as an estoppel, except as to the allegation that the defendant forged the indorsement."

In *Bell* v. *State,* 57 Md. 108, the defendant was convicted of passing an order for the payment of money on July 16, 1880, knowing it to be forged. Upon the trial the state offered evidence to prove that on July 17 defendant had passed a similar forged order. In defense the record was offered, which disclosed that the defendant had been charged with passing the order on July 17, and had been tried and acquitted. But counsel for defendant offered the record "for the purpose of affecting the weight and credibility of the evidence against the accused," and it was admitted for that limited purpose only. Before the jury, however, counsel for defendant undertook to argue that the record was conclusive against the contention of the state, but were not permitted to continue to argue to that effect. In disposing of the contention made, the appellate court said: "At the time that record was offered, the counsel might, if they had thought proper, have offered it generally, or as conclusive evidence, that the appellant had not forged or uttered the check of July 17, and as an estoppel upon the state, and, if rejected by the court when thus offered, or admitted for the purpose only of affecting the weight and credibility of the evidence against him, the appellant might have then excepted to such ruling, and had it reviewed by this court. But it was not so offered. On the contrary, it was offered expressly on the terms and for the purpose which

the court had stated it would be admissible for; that is, for the purpose of affecting the weight and credibility of the evidence against the accused. And even when the court interposed and stated the purposes for which alone the record had been admitted, the appellant might have excepted to the ruling, limiting the effect of the record to this particular purpose, if it had not been offered 'under the permission of the court as stated in the first exception.' (*Sauerwein* v. *Jones,* 7 G. & J. 341; *Inloes* v. *American Exchange Bank,* 11 Md. 185.) But he excepted, not to the limitation thus put upon the effect of the record as evidence, but to the court's refusal to permit his counsel to argue that the record had a larger and broader effect, than that to which it had been limited by the court. The court has an undoubted right to state to the jury the legal effect of evidence which has been introduced and submitted to their consideration. (*McHenry* v. *Marr & Emmart,* 39 Md. 532, 533; *Wheeler* v. *State,* 42 Md. 570.) Not having excepted to the statement made by the court of the legal effect of the record, it became the law of the case. (*Hogan* v. *Hendry,* 18 Md. 128; *Davis* v. *Patton,* 19 Md. 128; *Dent* v. *Hancock,* 5 Gill (Md.), 127.) Being the law of the case, counsel were not at liberty to argue against it."

In *Mitchell* v. *State,* 140 Ala. 118, 103 Am. St. Rep. 17, 37 South. 76, the defendant was convicted of arson, in burning a building belonging to Sue Harris. To prove the criminal intent in the commission of that offense, the state offered evidence tending to prove that about the same time and near the same place, the defendant had set fire to a building belonging to one Murphy. In defense the record was offered which disclosed that the defendant had been charged with burning the Murphy building, and had been tried and acquitted. The trial court refused to admit the record in evidence, and on appeal the supreme court said: "The evidence so offered was admissible under the doctrine of *res adjudicata,* whereof it has been well said: 'A final judgment on the merits determining any issue of law or fact after a contest over it, forever sets at

rest, and fixes it as a fact or as the law in any other litiga-
tion between the parties.' (Van Fleet's Former Adjudication,
2 *et seq.*) * * * For the error in rejecting the offer above
referred to, the judgment will be reversed, and the cause re-
manded.'' The following cases, though not directly in point,
illustrate the·same principle: *Commonwealth* v. *Ellis,* 160 Mass.
165, 35 N. E. 773; *Coffey* v. *United States,* 116 U. S. 436,
29 L. Ed. 684, 6 Sup. Ct. Rep. 437 [see, also, Rose's U. S.
Notes].

It is manifest that, if Heath told the truth, this defend-
ant was guilty of the crime charged against him in cause
No. 347, and the only possible explanation of the verdict ''not
guilty'' returned in that cause is that the jury determined
that Heath was not a credible witness. If then his story, as
told upon the trial of cause No. 347, was false, it was
equally false when repeated upon the trial of this cause, and
the record of acquittal was a conclusive adjudication that
defendant did not commit the criminal offense on November 9,
and estopped the state, upon the trial of this cause, to say
that Heath's testimony tended to prove that defendant acted
with criminal intent in taking the liquor from Barroch on
November 26, if in fact he did take it.

In refusing to admit the record generally, and in limiting
the purpose for which it was admitted, the trial court erred.

For the reasons given, the judgment and order are reversed,
and the cause is remanded to the district court of Musselshell
county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES
COOPER, GALEN and STARK concur.