STATE, RESPONDENT, *v.* DENNISON, APPELLANT.

(No. 7,090.)

(Submitted April 5, 1933. Decided April 21, 1933.)

[21 Pac. (2d) 63.]

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K. Matson,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Matson* argued the cause orally.

*Mr. D. W. Doyle,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

James Dennison, Phillip Ludwig, Royal Robison and Leon W. Jamison were jointly charged with the crime of assault in the second degree; a demand for separate trials was granted, and Dennison placed on trial. At the close of the state's case,

defendant's counsel moved the court to "instruct" the jury to return a verdict of not guilty, on the ground that the evidence failed to show that the defendant had committed a public offense. The court advised the jury to the effect that the motion was well taken, that it had carefully weighed the evidence, was acquainted with the law, and that it should retire to consider its verdict and return a verdict of not guilty. The court, however, did not instruct the jury that it was "not bound by the advice" to acquit. The jury returned a verdict of acquittal, and thereon a judgment of dismissal was entered. The state has appealed from the judgment.

The undisputed direct evidence is that the four defendants, riding in a Ford sedan with Ludwig driving, passed the chief of police of Shelby, Edward Tenbroeck, on the main street of the city at about midnight of July 24, 1932, when Ludwig said something that the officer did not catch; the car passed down the street, turned around, went to the middle of the next block and again turned. As the car passed the officer he ordered the driver to the curb, but the driver "stepped on the gas," whereupon the officer stepped on the running-board and forced the car to the curb, told the driver he was under arrest, and to get out of the car. This Ludwig refused to do; the officer tried to pull him out, while Jamison held him in. The officer then struck Ludwig; as he said, "I sapped him with my rubber bat," and Ludwig agreed to get out. The officer took him by the arm when Dennison came from the car and toward the officer, who commanded him to stand back, which he did. As the officer approached the city jail with his prisoner by the arm, Robison walked on the other side of Ludwig; Dennison and Jamison followed close behind; there was no one else in sight; they arrived at the jail. Tenbroeck testified: "When we got there, that is the last I remember." When consciousness returned he was in a ditch two and a half miles south of Shelby, covered with blood, and without cap and police equipment.

If no further evidence had been adduced, there might be merit in the defendant's contention that the evidence was in-

sufficient to show that this defendant was guilty of an assault. However, two witnesses saw the arrest and departure for the jail; they remained near the parked car, and, within ten or fifteen minutes, saw two of the four men return, enter the car, and drive rapidly toward the jail. A man living near the jail was awakened about midnight by sounds of a "fight," "shouting, hollering and swearing"; he could not see the combatants, but presently saw "two or three men" walking near the jail, who were met by a car, and "these men helped a man into the car" which was then driven "south."

The officer's cap and flashlight were found in front of the jail; his club, pistol and badge were turned over to the sheriff by counsel for the defendant five days after the assault.

A physician's testimony discloses that the officer sustained five bruises on the head, the skin "crushed and very bloody; one of these was back of the left ear; all were evidently made by a heavy blunt instrument; also a gash in the forehead, evidently made with a sharp instrument."

Thus the direct and circumstantial evidence tends to show that the officer was struck from the rear with a heavy blunt instrument, at a time when only the four men charged were present; the defendant and Jamison close behind him; the prisoner delivered and all four left eventually; that within a quarter of an hour after the arrest two of the four men returned to the car, drove rapidly toward the scene of the "fight," and immediately thereafter they appeared at the scene of the assault where the other two loaded the unconscious officer in the car; the four drove two and a half miles south where they threw the officer into the ditch. In the vernacular of the gangster, they "took him for a ride," as the Shelby press stated, and it is perhaps fortunate for them that the officer was a burly man, weighing 218 pounds, and possessing, evidently, a thick skull.

This evidence creates more than a mere suspicion that the four men were jointly implicated in a murderous assault upon the officer by concerted design to prevent the incarceration of Ludwig for a petty infraction of a traffic ordinance. This

defendant and Jamison were related to Ludwig; they had all recently come from Texas and were all working for one employer in Conrad; the interest of the others in Ludwig's arrest was therefore greater than that of casual traveling companions; they did not attempt to dissuade the officer from locking Ludwig up, and the manner in which they traveled toward the jail, followed by their subsequent actions, may well indicate a pre-arranged plan to take the prisoner from the officer.

As Ludwig was shown to have violated the ordinance, he was in lawful custody, and his rescue from the officer was therefore a crime. (Sec. 10864, Rev. Codes 1921). If the four men conspired together to effect a rescue, as might reasonably be inferred from the evidence, they thereby committed a crime. (Sec. 10898, Id.) If the assault was committed in the execution of a conspiracy to rescue the prisoner, on the trial for the crime committed, evidence to prove the conspiracy was admissible, although the conspiracy was not charged. "This is not permitted for the purpose of allowing a conviction of a crime not charged, but to lay a foundation for the admission of evidence." (5 R. C. L. 1087; *State* v. *Ruck*, 194 Mo. 416, 92 S. W. 706, 5 Ann. Cas. 976.) It is not necessary that the agreement to commit a crime be proved by direct evidence; the circumstances surrounding the crime committed may sufficiently demonstrate the fact that it was committed pursuant to a preconceived plan. (*State* v. *Hopkins*, 68 Mont. 504, 219 Pac. 1106; *State* v. *Arnold*, 84 Mont. 348, 275 Pac. 757; *State* v. *Collins*, 88 Mont. 514, 294 Pac. 957, 73 A. L. R. 861.)

Where there are two or more persons present at the scene of a crime, and there is no disinterested eye-witness thereto, as here, it becomes important to establish, if possible, concerted action, for, in the absence thereof, all may escape just punishment because of the state's inability to prove which one of those present was the actor in the commission of the crime. Proof of preconceived design or plan becomes important, therefore, not to prove the commission of the crime of conspiracy,

but to connect all those present, or the defendant on trial, with the crime committed, for the salutary rule is, that where several persons conspire or combine together to commit an unlawful act, each is criminally responsible for the acts of his associates or confederates, committed in furtherance of any prosecution of the common design, although such acts were not intended as a part of the original plan. (*People* v. *Ford*, 25 Cal. App. 388, 143 Pac. 1075; *People* v. *Suhr*, 25 Cal. App. 805, 143 Pac. 1088; *State* v. *Kukis*, 65 Utah, 362, 237 Pac. 476; *State* v. *Johnson*, 7 Or. 210; *State* v. *Robinson*, 120 Or. 508, 252 Pac. 951; *Holmes* v. *State*, 6 Okl. Cr. 541, 119 Pac. 430; *Ex parte Hayes*, 6 Okl. Cr. 321, 118 Pac. 609.) In the *Hayes Case* it is said that the least degree of concert of action or collusion is sufficient to make the act of one conspirator, in committing the crime charged, the act of all.

The direct evidence above is sufficient to show that the officer was assaulted, and the circumstantial evidence is sufficient to support a finding that the assault was committed at the jail and by one of the four men jointly charged. The evidence as a whole was sufficient to require a submission of the case to the jury on the theory that the assault was the result of concerted action to rescue the prisoner, and make a prima facie case against this defendant. It follows that the court erred in instructing or advising the jury to return a verdict of not guilty.

The judgment is reversed and the cause remanded to the district court of Toole county for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.