**Vincent W. ARIAS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. No. 74–1173–WPG.**

United States District Court,
C. D. California.

Jan. 28, 1975.

---

Roger S. Hanson, Woodland Hills, Cal., for petitioner.

William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Chief, Crim. Div., Dominick W. Rubalcava, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

Vincent W. Arias is in the custody of the Attorney General because of a sentence imposed by this court on February 26, 1973, following his conviction of the offense of conspiracy to possess, and possession of, a controlled substance with the intent to sell, in violation of 21 U.S.C. §§ 846 and 841(a)(1). He seeks to have such judgment set aside pursuant to 28 U.S.C. § 2255, contending that at the trial he was denied the Sixth Amendment right "to be confronted with the witnesses against him."

At the trial, Alphonse Moody, an undercover narcotics agent, testified that a drug transaction had been arranged with one Alfred Arellanes in the course of which Arellanes led him to a residential neighborhood in east Los Angeles. Moody testified, "[Arellanes] told me his people were here, and that he would have to go back and talk to them." (Tr., page 54). He further testified that Arellanes left Moody's vehicle, disappeared around the corner, and returned a few minutes later carrying a brown paper bag containing heroin. Gary Carter, a special investigator, and William Olney, a police officer, had been maintaining surveillance around the corner covering an area that Agent Moody was unable to see. They observed Arellanes conversing with Arias a few times on the public sidewalk. Shortly after one of these conversations, Arias walked to the corner and looked in the direction of Moody's vehicle. Arias later walked with Arellanes in the opposite direction and went beyond the officers' field of vision. During the course of the final conversation following this brief disappearance, a brown bag appeared in Arellanes' possession. None of the officers testified that they witnessed Arias actually possessing the brown bag. Arellanes did not testify.

The petitioner maintains that the use of the statement by Arellanes that "my people are here", coupled with the testimony that Arellanes and Arias had been speaking together, denied him his constitutional right to confront and cross-examine Arellanes.

■ In admitting the challenged hearsay declaration, this court relied on the co-conspirator hearsay exception. It

738

is well established that testimony of out-of-court declarations implicating another is admissible, notwithstanding its hearsay character, if· there is independent evidence that at the time of the statement the declarant and the other person were engaged in a concert of action involving the criminal conduct in question. United States v. Griffin, 434 F.2d 978, 983–984 (9th Cir. 1970). However, the court now holds substantial reservations regarding the appropriateness of its ruling admitting the declaration.

■■ The purpose of the Confrontation Clause is "to advance a practical concern for the accuracy of the truth-determining process . . . ." Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). Thus, statements introduced under hearsay exceptions that may dispense with the literal right to "confrontation" must be subjected to careful scrutiny so that the trier of fact is afforded a satisfactory basis for evaluating the truth of the statement. California v. Green, 399 U.S. 149, at 161–162, 90 S.Ct. 1930, 26 L.Ed. 2d 489 (1970).

In this case the truth of the statement was not substantiated by evidence adduced at trial. It was offered to prove the fact that Arias, being one of Arellanes' "people", played some role in the drug transaction. Collateral evidence of Arias' complicity was sparse, and the circumstances surrounding the statement (i. e., a street drug transaction, the witnesses not being privy to the Arias-Arellanes conversations, etc.) detract from its reliability. Unlikely as it may be, there is a possibility that Arellanes was referring to someone other than Arias in the remark concerning "his people". Although the two men were acknowledgedly acquainted, it is also possible that their meeting was by chance or, at least, unrelated to the criminal offense.

"The relevant factual inquiry [for assessing a statement's reliability] is whether, under the circumstances, the unavailability of the declarant for cross-examination deprived the jury of a satisfactory basis for evaluating the truth of the extrajudicial declaration." United States v. Adams, 446 F.2d 681, 683 (9th Cir. 1971). This court now feels obliged to answer such inquiry in the affirmative.

■ Accordingly, the court now concludes that the petitioner was unconstitutionally denied his Sixth Amendment right to confront and cross-examine Arellanes, and that the judgment of conviction must be vacated.